UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| J.A. *et al.*,<br><br>            Plaintiff,<br><br>      v.<br><br>Fort Wayne Community Schools,<br><br>            Defendant. | Civil Action No. 1:12-CV-155 JVB |

**OPINION AND ORDER**

   This case arises out of a controversy between Fort Wayne Community Schools (Defendant) and a student, J.A. (Plaintiff), over a bracelet bearing the slogan "I ♥ boobies (Keep a Breast)." The school interpreted the bracelet as conveying a lewd, vulgar, obscene, or plainly offensive message and confiscated it from Plaintiff when she wore it at school. Plaintiff argues that the bracelet promotes a positive breast cancer awareness message and that the school's ban violates the First Amendment's free speech protections. She seeks a permanent injunction allowing her to wear the bracelet at school.

   The parties agreed that the trial on the merits should be advanced and consolidated with the preliminary injunction hearing pursuant to Fed. R. Civ. P. 65(a)(2). They introduced evidence in the form of depositions and exhibits and submitted trial briefs. The Court also held a hearing to allow the parties to present their arguments orally.

   The Court has reviewed all submissions and has considered all the arguments. Giving deference to the school as it must, the Court finds that Defendant's interpretation of the bracelet

as lewd or vulgar is reasonable. Therefore, the Court denies Plaintiff's request for a declaratory judgment and permanent injunction.

**A. FACTS**

Plaintiff received her bracelet as a gift from her mother who is a breast cancer survivor. The outside of the bracelet reads, "I ♥ boobies (Keep a Breast)." (J.A. Aff., DE 22-2 at 3; J.A. Dep., DE 22-1 at 6.) On the inside of the bracelet is printed the website of the Keep a Breast Foundation, www.keep-a-breast.org, and includes the words "art. education. awareness. action." (DE 22-2 at 3.) The Foundation states on its website that it uses the phrase "I ♥ boobies" to "speak to young people in their own voice." Frequently Asked Questions, http://www.keep-a-breast.org/faq/#where-does-the-money-raised-go (last visited Aug. 1, 2013).

Plaintiff will be a senior for the 2013–14 school year at North Side High School ("North Side"), part of Fort Wayne Community Schools. (DE 22-1 at 2.) A total of 1,705 students attended North Side and 30,647 attended schools across Fort Wayne Community Schools in 2012, making it one of the largest school corporations in Indiana. (Enrollment Bulletin, DE 22-3 at 78.)

Defendant prohibits students from wearing "inappropriate" plastic bracelets that contain "messages that are solicitous, profane, [or] obscene." (Disciplinary Rules, DE 22-3 at 54; Dress Policy, DE 28-1 at 4.) The school strictly enforces this policy by confiscating banned bracelets. Confiscated bracelets have included the slogans, "I'm a free bitch," "Fuck Off," "Sexy," "Ask me about my wiener," "Bad Ass," and "Save the Boobs." (Jovan Barnes Aff. DE 25 at 1; DE 22-3 at 73).

2

The I ♥ boobies bracelet came to Defendant's attention in 2010 after a male student wearing the bracelet harassed a female student at North Side. (Witherspoon Dep., DE 22-3 at 16; Ans. to Pl. Interrog., DE 22-3 at 65.) School administrators concluded that the bracelet's terminology was "offensive to women and inappropriate for school wear" making the bracelet "lewd, vulgar, obscene, solicitous, and/or plainly offensive speech." (Ans. to Pl. Interrog., DE 22-3 at 66.) Since that time, Defendant has confiscated a number of I ♥ boobies bracelets across the school system. (DE 22-3 at 73–74.)

J.A. started wearing the bracelet to school in December 2011, after the school had already banned the bracelet. (DE 22-1 at 4.) She wore the bracelet for three months before a school administrator confiscated it in March 2012. (*Id.*)

B. **LEGAL STANDARD**

**(1)** *The Injunction Standard*

Plaintiff has requested a permanent injunction against the school. In order to succeed on this permanent injunction, Plaintiff must show that her case meets five criteria:

> (1) [that she has] succeeded on the merits; (2) no adequate remedy at law exists; (3) [she] will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm [Defendant] will suffer if the injunction is granted; and (5) the injunction will not harm the public interest.

*Old Republic Ins. Co. v. Emp'rs Reins. Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998).

Defendant argues that Plaintiff has not met criteria 1, 3, 4, or 5 of the test. However, Defendant relies on the foundational argument that Plaintiff does not have a First Amendment right to wear the bracelet in school. If Plaintiff succeeded on the merits, then she would have a

3

First Amendment right to wear the bracelet at school and would meet all the criteria for the injunction. Therefore, the Court will focus on whether Plaintiff succeeds on the merits.

**(2)** *The Fraser Standard*

Students do not check their First Amendment rights at the door when they enter the school. *Tinker v. Des Moines Indep. Comty. Sch. Dist.*, 393 U.S. 503, 506 (1969). However, the First Amendment does not compel schools to "surrender control of the American public school system to public school students." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986) (quoting *Tinker*, 393 U.S. at 526 (Black, J., dissenting)). The students' rights are curtailed by the schools' "countervailing interest in teaching students the boundaries of socially appropriate behavior," *Fraser*, 478 U.S. at 681, and to protect "students from offensive speech." *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. No. 204*, 523 F.3d 668, 671 (7th Cir. 2008). This interest flows from the schools' responsibility to teach students the "'habits and manners of civility' essential to a democratic society." *Fraser*, 478 U.S. at 681.

The Supreme Court wrestled with the scope of a school's ability to limit vulgar speech in *Fraser*. In that case, a high school student gave a speech that included an "elaborate, graphic, and explicit sexual metaphor" to an auditorium full of his classmates. *Id*. at 678. As they heard the speech, some students "hooted and yelled" while others "graphically simulated the sexual activities pointedly alluded to in [the student's] speech." *Id*. The school suspended the speaker for three days for violating school rules that banned "obscene, profane language or gestures." *Id*.

In affirming the school's ability to limit vulgar speech, the Court held that "essential lessons of civil, mature conduct cannot be conveyed in a school that tolerates lewd, indecent, or offensive speech." *Id*. at 683. The Court acknowledged that the authority to "determin[e] what

4

manner of speech . . . is inappropriate properly rests with the school board." *Id*. Drawing on this principle, the Court crafted a new rule allowing schools to prohibit students from using lewd, vulgar, obscene, or plainly offensive speech while in school. *Id*. at 683–85. The Court upheld the school's decision to sanction the offending high school student because his speech could reasonably be interpreted as lewd and vulgar. *Id*. at 685.

*Fraser* established that schools should get deference from the courts when they determine whether student speech is lewd or vulgar. The deference is reasonable because vulgarity, lewdness, and obscenity are determined by "opinions and perspectives" that "vary widely from one community to the next." *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, No. 11-2067, 2013 U.S. App. LEXIS 16087, at *114 (3d Cir. Aug. 5, 2013) (Hardiman, J. dissenting). The appropriateness of language also depends on "contextual subtleties." "A shockingly indecorous act at the dinner table may be par for the course in the locker room or on the playground." *Muller ex rel. Muller v. Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1543 (7th Cir. 1996); *see also FCC v. Pacifica Found.*, 438 U.S. 726, 747 (1978) ("Words that are commonplace in one setting are shocking in another.").

For these reasons, school officials who "know the age, maturity, and other characteristics of their students" are in a much better position to decide whether speech is vulgar than judges who are "restricted to a cold and distant record." *B.H.*, 2013 U.S. App. LEXIS 16087, at *34. Judges are "outsiders" who do not have the experience and competence to "tell school authorities how to run schools in a way that will preserve an atmosphere conducive to learning." *Nuxoll*, 523 F.3d at 671–72; *see also Brandt v. Bd. of Educ. of City of Chi.*, 480 F.3d 460, 467 (7th Cir. 2007) ("[Schools] have an interest of constitutional dignity in being allowed to manage their affairs and shape their destiny free of minute supervision by federal judges.").

Giving appropriate deference to schools requires courts to review school determinations by asking whether an objective observer could reasonably interpret the slogan as lewd, vulgar, obscene, or plainly offensive. *Muller*, 98 F.3d at 1543 (7th Cir. 1996) ("the touchstone is reasonableness."). This standard requires courts to evaluate the context, content, and form of the speech in addition to the age and maturity of the students. *B.H.*, 2013 U.S. App. LEXIS 16087, at *34. This means that the "subjective intent of the speaker is irrelevant." *Id*. The older and more mature the students are, the more freedom they have to speak. However, "heavy" oversight by the courts over high schools "make[s] little sense." *Nuxoll*, 523 F.3d at 671.

This Court is aware that the Court of Appeals for the Third Circuit handed down an *en banc* opinion in a case involving the exact same bracelet just a few weeks ago. That case involved two female middle school students who started wearing the bracelets to school in 2010. *B.H.*, 2013 U.S. App. LEXIS 16087, at *6. Administrators allowed students to wear the bracelets for several months. However, they eventually decided to ban them because of their concerns about students using them as an excuse to make inappropriate sexual comments. *Id*. The students filed suit in federal court seeking an injunction against the school. The district court granted the injunction after finding the phrase "I ♥ boobies" could not "reasonably be deemed to be vulgar" because it was used in the "context of a national breast cancer awareness campaign." *B.H. et al. v. Easton Area Sch. Dist.,* 827 F. Supp. 2d 392, 406 (E.D. Pa. 2011).

The Third Circuit upheld the district court's conclusion only after crafting a brand new rule modifying the traditional *Fraser* standard. The court held that a school can only limit student speech under *Fraser* if the speech can reasonably be interpreted as either: (1) plainly lewd, or (2) ambiguously lewd and cannot "plausibly be interpreted as commenting on political or social issues." *B.H.*, 2013 U.S. App. LEXIS 16087, at *6. The Third Circuit crafted this rule by grafting

6

Justice Alito's concurring opinion from *Morse v. Frederick*, 551 U.S. 393 (2007), onto the *Fraser* standard. *B.H.*, 2013 U.S. App. LEXIS 16087, at *37. The Third Circuit relied on Alito's concurrence concluding that it, not the majority opinion provided the controlling law. They reached this conclusion after extending the "narrowest grounds" doctrine articulated in *Marks v. United States,* 430 U.S. 188, 193 (1977), which normally applies when "no single rationale explaining the result enjoys the assent of five Justices." *Id*. The Third Circuit extended the doctrine to give controlling weight to a concurring justice who articulates the narrowest ground supporting a decision if that justice's vote was necessary to reach a majority. *B.H.* 2013 U.S. App. LEXIS 16087, at *38–40.

Using their new rule, the Third Circuit majority upheld the district court's decision because it found that the bracelet's language was not plainly lewd and could be interpreted as commenting on a social issue. *Id*. at *70–71. Because the majority upheld the district court's decision on these grounds, they did not "determine whether a reasonable observer could interpret the bracelets' slogan as lewd." *Id.* at 70 n.22.

However, the Seventh Circuit has already expressly rejected the argument that Alito's opinion controls *Morse*. The court found that by "join[ing] the majority opinion [in *Morse*], not just the decision," "Justices Alito and Kennedy made it a majority opinion and not merely . . . a plurality opinion." *Nuxoll*, 523 F.3d at 673. Therefore Justice Alito's concurrence was merely his own "view of the permissible scope of [school] regulation [of student speech]." *Id*. The Third Circuit majority recognized that their novel reading of *Morse* implied "reject[ing] the Seventh Circuit's . . . approach." *B.H.* 2013 U.S. App. LEXIS 16087, at *49 n.17. The Seventh Circuit is in good company, as eight other appellate courts have adopted the rule articulated by the

7

majority opinion in *Morse* instead of Alito's concurrence. *Id.* at *93 & n.1 (Hardiman, J. dissenting).

The majority's opinion in *Morse* did not establish new limits on a school's ability to regulate student speech commenting on political or social issues. The only possible limit the opinion placed on *Fraser* was an instruction to schools to avoid banning "any speech that could fit under some definition of 'offensive.'" *Morse*, 551 U.S. at 409.

Therefore, the bracelet's commentary on social or political issues does not provide additional protection under the First Amendment. This Court will ask solely whether the school made an objectively reasonable decision in determining that the bracelet was lewd, vulgar, obscene or plainly offensive.

C. **ARGUMENT**

Defendant did not argue that the bracelet caused a substantial disruption. Therefore, the Court will only analyze the school's decision to ban the bracelet under *Fraser*. Determining the meaning of the bracelet requires the Court to analyze the meaning of the words individually, the slogan as a whole, and the age and maturity of students at North Side.

**(1)** *The Word "Boobies" is Sometimes Vulgar*

Defendant argues that the word "boobies" is vulgar because it "describes a female's breasts in an inappropriate manner." (DE 22-3 at 11). Plaintiff responds by arguing that the term

"boobies" is a widely-recognized slang synonym for breasts that comes nowhere near to the "elaborate and graphic sexual metaphor" used in *Fraser*.

Plaintiff places too much weight on contrasting the bracelet's message with the metaphor used in *Fraser*. A phrase may be vulgar even if it is not an "elaborate, graphic, and explicit sexual metaphor." *K.J. et al v. Sauk Prairie Sch. Dist. et al.*, No. 11-cv-622-bbc, 2012 U.S. Dist. LEXIS 187689, at *17 (W.D. Wis. Feb. 6, 2012) (characterizing the "I ♥ boobies" slogan as a "far cry from the extended metaphor for sexual intercourse in *Fraser*" but still "sexual innuendo that is vulgar, at least in the context of a middle school".). The Court must focus on evaluating the bracelet's slogan within the facts of this case.

Webster's dictionary defines "booby" as a term for breast that is sometimes vulgar. *Webster's 3rd New Int'l Dict. of the Eng. Language Unabridged* 252 (2002). Webster's defines vulgar speech as "crude or offensive" or "lewd, obscene or profane." *Id*. at 2566.

A federal judge has also found that "'boobies' is a morally immature and crude term for breasts." *K.J.*, 2012 U.S. Dist. LEXIS 187689, at *17–18. Even Plaintiff herself acknowledged that the term is slang as well as "tasteless or immature."

The word "boobies" is clearly not just an innocuous informal synonym used by young people to refer to breasts. However, its appropriateness is highly contextual. Determining its vulgarity, or lack thereof, requires the Court to examine its use in the entire phrase.

### (2) *The Phrase "I ♥ boobies" May Be Lewd or Vulgar*

Plaintiff argues that the bracelet clearly promoted breast cancer awareness, foreclosing any possibility that it could be interpreted as a sexual witticism. Defendant counters that the

9

bracelet's message can also connote a sexual attraction to breasts, especially when it is used by teenage boys.

Therefore, this Court must ask whether there is evidence to support the school's interpretation. The record provides at least three instances. First, Defendant banned the bracelet after a male student stared at a girl and repeated the words "I love boobies" while wearing the bracelet. Second, Plaintiff testified that male students liked to repeat the phrase while wearing the bracelets, not because they were supporting breast cancer awareness, but because they liked saying "boobies." Third, there was an incident where some high school students were "taunting" a particular student about the bracelet. (DE 22-3 at 13.) Although the record is silent on what the students were saying, it is reasonable to infer that the taunting had something to do with the word "boobies." This type of behavior is similar to that of the middle school students in the *Easton* case who "parroted the phrase on the bracelets while conveying sexual attraction to breasts." *B.H.*, 2013 U.S. App. LEXIS 16087, at *118 (Hardiman, J., dissenting).

Middle school boys are not the only ones who interpret the bracelets sexually. Adults who make a living selling sexually themed items have tried to acquire the bracelet. The Keep a Breast Foundation has denied requests from "truck stops . . . vending machine companies, and pornographers to sell the bracelet." *Id.* at *12. Clearly, the breast cancer awareness message does not eliminate the vulgar meaning behind "I ♥ boobies."

Finally, of the three other federal courts to examine this bracelet, only the Pennsylvania District Court concluded that it was unreasonable for an objective observer to interpret the bracelet's message as vulgar. *B.H. et al.*, 827 F. Supp. 2d at 406. The dissent in the Third Circuit case and the Wisconsin federal court agreed that the positive cancer awareness message did not sanitize the vulgar slogan. *See B.H.*, 2013 U.S. App. LEXIS 16087, at *118 (Hardiman J.,

10

dissenting); *K.J.*, 2012 U.S. Dist. LEXIS 187689, at *17. The Third Circuit majority did not address whether the phrase could be vulgar because they viewed its social commentary sufficient to grant it First Amendment protection. *B.H.*, 2013 U.S. App. LEXIS 16087, at *70 n.22.

There is evidence that a reasonable observer could interpret the bracelet as being vulgar. Now the Court must examine the school's environment to evaluate the age and maturity of the students.

**(3)** *The Age and Maturity of the North Side Students Supports Defendant's Decision*

Plaintiff argues that, even if this phrase is "tasteless," high schoolers are mature enough to be exposed to this slogan. Yet high school is not a magical place where students leave behind a sexually charged middle school environment and automatically become mature adults. Freshman students are often only 14 years old and "on the threshold of awareness of human sexuality." *Fraser*, 478 U.S. at 683–84. Therefore, the Court must consider evidence about the maturity level of the students at the school. Maturity does not necessarily correspond to the level of exposure to sexual messages. Rather, maturity impacts the appropriateness of language that administrators allow in a school environment. Immature students are less able to handle messages containing sexual innuendo.

The evidence in the record reveals a low maturity level at the school. Male high school students said the word "boobies" in the halls and in the classroom, conveying a sexual message rather than supporting breast cancer awareness. A number of students wore other bracelets with plainly lewd and obscene words written on them. The school also had to stop students from taunting a student wearing a bracelet. These incidents demonstrate a maturity level similar to

11

middle school students. The school could therefore reasonably conclude that the bracelet contained sexual innuendo that was vulgar within the context of North Side High School.

### (4) *The Bracelet's Message is Ambiguously Lewd and Therefore Defendant's Ban is Reasonable*

Considering all these factors, the bracelet "falls into a gray area" between being "plainly lewd and merely indecorous." *B.H.* 2013 U.S. App. LEXIS 16087, at *115 (Hardiman J., dissenting); *K.J.*, 2012 U.S. Dist. LEXIS 187689, at *17 (stating that the phrase "straddles the line between vulgar and mildly inappropriate."). When confronted with ambiguously vulgar slogans, federal courts have sided with the school administrators' decision to ban them. In a Massachusetts case, a federal court upheld a ban on a "lukewarm" sexual innuendo phrased as "See Dick Drink. See Dick Drive. See Dick Die. Don't be a Dick." *Pyle ex rel. Pyle v. S. Hadley Sch. Comm.*, 861 F. Supp. 157, 159 (D. Mass. 1994) *vacated on other grounds Pyle v. South Hadley Sch. Comm.*, 55 F.3d 20, 21 (1st Cir. Mass. 1995).

Another federal court upheld a ban on a double entendre "Drugs Suck." Even though the word "suck" could also mean "bad" in the context of discouraging drug use, the court found that the message's sexual connotations allowed the school to ban the slogan. *Broussard v. School Bd. of Norfolk*, 801 F. Supp. 1526, 1536–37 (E.D. Va. 1992).

Even in *Morse* the Supreme Court rejected the notion that the plaintiff's sign, "Bong Hits for Jesus," was merely "nonsense meant to attract television cameras." *Morse*, 551 U.S. at 401. Instead the Court found that the school principal's interpretation of the phrase as promoting illegal drug use was plainly reasonable. *Id*.

This case is also distinct from the *Easton* case. In that case, administrators waited several months to ban the bracelets, and did so even though they had not "heard any reports of disruption or student misbehavior linked to the bracelets." *Easton*, 827 F. Supp. 2d at 397. There was also evidence that the administrators did not "actually consider the word boobies to be vulgar." *Id*. at 407. In contrast Defendant responded swiftly to a reported disruption caused by a student using the bracelet's slogan in an offensive manner. Additionally, the record indicates that they consistently enforced their ban, including confiscating similar bracelets such as one that said "Save the Boobs."

If the Court adopted Plaintiff's analysis and issued an injunction, Defendant's ability to regulate speech that is lewd but supports a noble cause will be limited. As the dissent in *Easton* noted, this bracelet is not the only one with a slogan that toes the line between mildly inappropriate and vulgar in the name of supporting cancer awareness. One organization the dissent highlighted was The Testicular Cancer Awareness Project, which sells bracelets imprinted with the words of its website "feelmyballs.com." *B.H.* 2013 U.S. App. LEXIS 16087 at 123–24 (Hardiman, J., dissenting). Defendant has dealt with this challenge first hand. One of the bracelets confiscated by the school used the slogan "Save the Boobs." If the "I ♥ boobies" bracelet is allowed it is difficult to articulate a principle that distinguishes it from "feel my balls" or "Save the Boobs." School officials, who know the age, maturity, and other characteristics of their students better than federal judges, are in a better position to decide whether to allow these products into their schools. Issuing an injunction would take away the deference courts owe to schools and make their job that much harder.

**D. CONCLUSION**

Running one of the largest school corporations in the state is a difficult task. The last thing Fort Wayne Community Schools needs is for an outsider from a courthouse to scrutinize every move in the schoolhouse. The evidence in the record demonstrates that Defendant prohibited the bracelet based on a reasonable belief that it was lewd, vulgar, obscene or plainly offensive. Therefore, this Court must defer to Defendant's judgment and deny Plaintiff's motion for a permanent injunction.

The Court denies Plaintiff's motion for declaratory judgment and permanent injunction (DE 17). The Clerk is ordered to enter judgment in favor of Defendant.

**SO ORDERED** on August 20, 2013.

        s/ JOSEPH S. VAN BOKKELEN
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE